UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------------------------------x
ANIBAL AVILLAN,

                     Plaintiff,                    04 Civ. 9019 (PKC) (FM)

        -against-                     MEMORANDUM
                                              AND
JOHN E. POTTER, Postmaster General,      ORDER

                     Defendant.
----------------------------------------------------------------x

P. KEVIN CASTEL, U.S.D.J.

        Plaintiff Anibal Avillan, proceeding pro se, brings this action pursuant to

Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e et seq. ("Title VII"), and

the Age Discrimination in Employment Act of 1967, 29 U.S.C. §§ 621 et seq. ("ADEA"),

against John E. Potter, the Postmaster General of the United States Postal Service.[1]

Plaintiff alleges that various Postal Service employees discriminated against him on the

basis of his race, national origin, and age, and also retaliated against him for engaging in

protected activity.

        Defendant has moved for summary judgment on various grounds, alleging

that some of plaintiff's claims are barred by res judicata and his election of remedies, and

that plaintiff's remaining claims fail to establish a prima facie case of discrimination

and/or retaliation.  Defendant further contends that even if plaintiff has established a

prima facie case, defendant has offered legitimate, nondiscriminatory, and nonretaliatory

---

[1] On its face, plaintiff's complaint—a form complaint provided to plaintiff by this Court's Pro Se Office—indicates only a desire to proceed under the Title VII; however, his pleadings, briefs, and deposition indicate a belief that he has invoked the ADEA with respect to some of his claims.  In light of plaintiff's pro se status, and the command that pro se pleadings are to be given liberal construction, see e.g., Green v. United States, 260 F.3d 78, 83 (2d Cir. 2001), I read the complaint as alleging age discrimination.

reasons for the purported adverse employment actions and plaintiff, in response to the motion, has failed to come forward with evidence that the reasons are pretextual.

Plaintiff was afforded an opportunity to conduct discovery, and the discovery period is now closed.  Defendant has served the requisite Notice to <u>Pro</u> <u>Se</u> Litigant Opposing Motion for Summary Judgment.  In addressing defendant's motion, I have considered only plaintiff's version of the facts and such other facts as are not disputed by the plaintiff.[2]  Where multiple inferences may be drawn from the facts, I have considered only the inference most favorable to plaintiff, the non-movant.

For the reasons set forth below, defendant's motion is granted.

I.     <u>BACKGROUND</u>

   A.     <u>The Postal Service Hiring Process</u>

Plaintiff—who identifies himself as a Hispanic man born in Puerto Rico on January 24, 1944 (Compl. ¶ 7; Avillan Dep. 11)—has had a long, tumultuous, and litigious history with his employer, the United States Postal Service ("Postal Service"). Although he has been on the Postal Service's payroll as a custodial laborer since June 1999, plaintiff spent many years and much effort seeking his present position.  Plaintiff first took the Postal Service "Cleaner/Custodian" entrance exam in September 1994, and was repeatedly contacted by the Postal Service personnel department for drug-tests and interviews in the ensuing years.  (Avillan Dep. 25)  Throughout that time, personnel

---

[2] While plaintiff did not include with his opposition papers a statement of material facts in dispute as required under Local Rule 56.1, he did submit a "Memorandum of Law Opposing Defendant's Motion for Summary Judgment Pursuant to Local Rule 56," in which he presents a different account of certain facts as set forth in defendant's Rule 56.1 statement. In light of plaintiff's <u>pro se</u> status, I will excuse his failure to comply with the rules, and treat his opposition papers as though they contained a counterstatement under Rule 56.1. <u>See</u>, <u>e.g.</u>, <u>Holtz v. Rockefeller & Co.</u>, 258 F.3d 62, 72-73 (2d Cir. 2001) ("A district court has broad discretion to determine whether to overlook a party's failure to comply with local court rules.").

department employees, most frequently a woman named Christine Patterson, repeatedly informed plaintiff that he had not scored well enough on his entrance exam to qualify for employment, and plaintiff was eventually told that his eligibility for employment had expired.  (Avillan Dep. 77; Pl. Mem. Opp. Ex. F)

Frustrated by his failure to obtain employment, in August 1998 plaintiff filed an EEO complaint ("1998 EEO Complaint") with the Postal Service alleging unlawful age discrimination in the Postal Service's hiring process.  (Friedman Decl. Ex. A; Pl. Mem. Opp. Ex. H)  While not entirely clear from the record, it appears that plaintiff believed that the personnel department reduced his score on the basis of a discriminatory age factor.  (Hallums Decl. Ex. CC at 4)  In October 1998, the Postal Service dismissed the complaint as untimely filed.  (Friedman Decl. Ex. B)  In November 1998 plaintiff appealed the Postal Service's ruling to the United States Equal Employment Opportunity Commission ("EEOC"), which affirmed the agency's dismissal in December 1999.  (Friedman Decl. Ex. C)

While awaiting a decision on his first EEOC appeal, plaintiff sought equal employment opportunity ("EEO") counseling with the Postal Service for a second time in April 1999 on the grounds that the continued failure to hire him was retaliatory for his first EEO complaint.  (Pl. Mem. Opp. Ex. K)  Shortly thereafter, in June 1999, plaintiff was hired by the Postal Service into the position that he presently holds.  (Avillan Dep. 26)  Notwithstanding this development, plaintiff proceeded to file his second formal EEO complaint ("1999 EEO Complaint") with the Postal Service in July 1999, claiming discrimination and retaliation in the Postal Service's hiring process, and seeking back pay to the time of his first interview in 1995.  (Pl. Mem. Opp. Ex. L)  In November 1999, the

Postal Service dismissed the 1999 EEO Complaint as untimely filed.  (Friedman Decl.

Ex. E)  This result was affirmed by the EEOC on appeal (on a date that is unavailable in

the record), and plaintiff's request for reconsideration was denied by the EEOC in

October 2000.  (Friedman Decl. Ex. F)

   In January 2001, plaintiff brought his claims from the 1999 EEO

Complaint to federal court and commenced an action against the Postmaster General in

this district.  Plaintiff alleged discrimination and retaliation in the Postal Service's hiring

process, as well as discriminatory and retaliatory treatment in the terms and conditions of

his employment.  (Hallums Decl. Ex. CC)  On February 21, 2002, Judge Stein granted the

defendant's motion for summary judgment on the grounds that plaintiff's 1999 EEO

Complaint was untimely filed with the Postal Service's EEO Office.  See Avillan v.

Potter, No. 01-Civ-1648 (SHS), 2002 WL 252479 (S.D.N.Y. Feb. 21, 2002) ("Avillan

I").  Plaintiff never appealed that judgment.


   B.  Plaintiff's Suspension

   While plaintiff was marshaling his "failure to hire" claims through agency

adjudication and federal court, he began encountering problems with his supervisors.

Plaintiff identifies James Hardy as his principle antagonist.  Hardy originally worked

with plaintiff as his direct supervisor from June 1999 to September 1999.  (Avillan Dep.

36).  After September 1999, Richard Rivera directly supervised plaintiff, and was

succeeded by Julio Amaro in 2002.  (Avillan Dep. 42, 49)  However, it appears that

plaintiff's direct supervisors were at all relevant times subject to Hardy's supervision, and

plaintiff alleges that most of the adverse employment actions taken against him were either perpetrated by Hardy, or done with Hardy's encouragement.

Plaintiff's difficulties with Hardy began on May 10, 2000, when plaintiff lost two Postal Service keys.  (Avillan Dep. 100-01)  Hardy informed plaintiff that the loss of the keys "meant termination and that [plaintiff] ha[d] to pay for the lock[s]."  (Id.)  A second series of altercations began to unfold the next day on May 11, 2000, when Hardy reprimanded plaintiff for failing to properly clean some of the garbage cans for which plaintiff was responsible.  (Id. at 202)  Other custodial laborers were present at the time, and Hardy began to review proper maintenance procedures for the area in question.  (Id.)  Plaintiff—apparently under the impression that the area was no longer on his custodial route—left the area, which Hardy interpreted as plaintiff's abandonment of an assignment.  (Id. at 202-03)  Hardy initiated disciplinary actions against plaintiff, and at a "pre-disciplinary interview" on May 16, 2000, plaintiff claims that Hardy misinterpreted plaintiff's demeanor as disruptive and insubordinate, which prompted Hardy to place plaintiff on "emergency off-duty status" without pay.  (Id. at 203-04)  Plaintiff was threatened with forcible removal from the building, and a picture of plaintiff was posted in the employee's entrance together with a sign that read "DO NOT LET IN BUILDING."  (Pl. Mem. Opp. Ex. N)

On May 21, 2000, the Postal Service issued a "Notice of 14 Day Suspension" to plaintiff which was based on charges arising out of the three events that took place earlier in that month.  (Friedman Decl. Ex. G)  Specifically, the charges were (1) "Creating an Unsafe Condition" by losing the keys; (2) "[Failure to] Give a Full Day Labor for a Full Day Pay" for walking away from his assignment; and (3) "Disrupting the

Postal Service Day [to] Day Operation" for his conduct at the May 16 pre-disciplinary

interview.  (Id.)  While plaintiff never actually served the proposed suspension beyond

the one day's placement on emergency off-duty status, plaintiff requested EEO

counseling in June 26, 2000.  (Friedman Decl. Ex. I)  His third formal EEO complaint

followed on November 21, 2000 ("2000 EEO Complaint").  (Friedman Decl. Ex. J).

While not perfectly clear from the face of the 2000 EEO Complaint, plaintiff now alleges

that the behavior of his supervisors was retaliatory and discriminatory.  As evidence,

plaintiff states that his African-American coworkers have lost Postal Service keys

without any disciplinary repercussions.  (Avillan Dep. 103-05)  Plaintiff also alleges that

Hardy and other supervisors mischaracterized both the abandonment charge and the

disruption charge in order to retaliate against plaintiff for prior EEO activity.  (Avillan

Dep. 106)


        C.     <u>Plaintiff's Termination</u>

           As plaintiff was pursuing his administrative remedies with the EEO office,

his relationship with his supervisors deteriorated further.  On October 2, 2000, plaintiff

received a Notice of Proposed Removal from his supervisors, which was based on three

new charges that: (1) plaintiff had been "Absent Without Official Leave (AWOL)" on

September 1, 2000; (2) plaintiff failed to follow instructions in seeking emergency leave

on September 1, 2000; and (3) plaintiff was disrespectful to a supervisor at a pre-

disciplinary interview on September 11, 2000.  (Friedman Decl. Ex. K)  The Notice also

stated that plaintiff's record and the charges raised in the Notice of 14 Day Suspension

were considered in the proposed removal.  (Id.)  On November 29, 2000, the Postal

Service maintenance manager, Wayne Griffith, issued a Letter of Decision in which he found that the charges were substantiated by the evidence and justified removal. (Friedman Decl. Ex. L)  Plaintiff's removal was made effective on January 12, 2001. (Friedman Decl. Ex. M)

Plaintiff appealed his removal to the Merit Systems Protection Board ("MSPB") in January 2001, alleging discrimination and retaliation.  (Friedman Decl. Ex. N)  In that appeal, plaintiff claimed that the Notice of Proposed Removal contained one "false allegation[]," as plaintiff denies that a September 11 pre-disciplinary meeting ever took place.  (Friedman Decl. Ex. N; Avillan Dep. 180)  He also claims that he took the unauthorized emergency leave on September 1, 2000 because he was repeatedly denied his annual leave, and that in any event, he complied with the procedures for taking emergency leave as he understood them.  (Avillan Dep. 178-79)

Plaintiff's MSPB appeal never reached a decision on the merits because on March 21, 2001, while the matter was pending, the Postal Service rescinded both the Notice of Proposed Removal and the Letter of Decision.  (Friedman Decl. Ex. O)  The MSPB field office dismissed the appeal as moot, but advised plaintiff of his right to appeal the disposition to the MSPB review board and the Court of Appeals for the Federal Circuit.  (Friedman Decl. Ex. P)  On March 26, 2001, plaintiff resumed his position with the Postal Service and received his back pay between six and eight months later.  (Avillan Dep. 189)  Plaintiff never further appealed the MSPB decision.

D.      Harassment Following Reinstatement

In April 2002, plaintiff initiated his fourth EEO counseling session, again alleging that the Postal Service unlawfully discriminated and retaliated against him in the terms and conditions of his employment.  (Pl. Mem. Opp. Ex. T)  In the formal complaint that followed in August 2002 ("2002 EEO Complaint"), plaintiff raised new allegations of harassment by his supervisors, including (1) the falsification of documents in his personnel file and the failure to purge his record of prior employment actions; (2) assignment of additional routes, one of which required plaintiff to "dust down" a potentially hazardous area during an anthrax scare in December 2002; and (3) denial of a uniform allowance for the years 2001 and 2002.  (Pl. Mem. Opp. Ex. V)   The Postal Service consolidated the 2002 EEO Complaint with the pending 2000 EEO Complaint, and denied all claims of discrimination and retaliation on the merits on July 22, 2004. (Friedman Decl. Ex. U)

E.      The Complaint

On November 16, 2004, plaintiff filed the instant complaint.  Plaintiff alleges discrimination and retaliation in the Postal Service's hiring process.  (Compl. ¶ 8) He further alleges that after obtaining employment he was discriminated against and retaliated against for his EEO activity.  Specifically, plaintiff alleges violations in: (1) the events surrounding his suspension and placement on off-duty status in May 2000 (Compl. Attach. A); (2) the events surrounding his termination from September 2000 to January 2001 (Compl. ¶ 8, Attach. A); (3) the denial of his requests for annual leave (Compl. ¶ 8); (4) the denial of an attendance award in 2000 (Compl. ¶ 8); (5) the denial of a uniform

allowance in 2001 and 2002 (Compl. ¶ 8); (6) instructions from his supervisors to his coworkers to dissociate from him (Compl. ¶ 8); (7) his receipt of additional and hazardous work assignments (Compl. Attachs. A, A-1); (8) the existence of false documents in his personnel file (Compl. Attach. A-1); and, (9) the Postal Service's failure to pay him for all of the hours he has worked.  (Compl. Attach A)[3]

While the complaint alleges discrimination and retaliation, the pleading does not furnish any basis for assessing which acts were motivated by retaliation, which were motivated by racial or national origin discrimination, and which were motivated by age discrimination.[4]  In the form complaint provided to plaintiff by this Court's Pro Se Office, plaintiff checked the box on the front page of the complaint indicating a desire to bring his suit under Title VII.  He did not check the box for ADEA claims, despite the instruction on the form to "check only those that apply."  Plaintiff also did not indicate his age or date of birth in the required field at paragraph 7 (although he did do so in his first federal complaint in Avillan I).  Plaintiff did, however, answer one question, number 11, that pertained only to age discrimination claims.  Subsequent to the filing of the complaint, plaintiff has indicated his belief that he alleged age discrimination in this action.  (Avillan Dep. 82-83)  I will therefore construe plaintiff's complaint as alleging

---

[3] At plaintiff's deposition, conducted on January 5, 2006 (Hallums Decl. Ex. BB), plaintiff discussed his failure to receive promotions at the Postal Service, as well as the one instance in which he declined to accept a promotion.  (Avillan Dep. 61-70)  In his submissions in opposition to summary judgment, plaintiff attached a copy of a letter denying his application for the job of Technical Security Specialist with the Postal Service (Pl. Mem. Opp. Ex. S), and the government addressed the lawfulness of plaintiff's failure to be promoted in its reply brief.  (Def. Reply Mem. 7)  Since plaintiff did not mention his failure to obtain a promotion in his complaint, never raised the issue in his EEO complaints, and has not brought the issue to the Court's attention except to annex a letter to his opposition papers (without discussion or explanation), I do not construe the complaint as alleging failure to promote claims.

[4] I note that while plaintiff is proceeding pro se, he has considerable prior exposure to employment discrimination litigation in this district.  See Avillan v. Ditigal Equip. Corp., No. 91-Civ.-8594(LBS), 1994 WL 2225458 (S.D.N.Y. May 26, 1994) (represented by counsel, obtained settlement prior to trial (Avillan Dep. 22); Avillan v. Potter, No. 01-Civ.-1648(SHS), 2002 WL 252479 (S.D.N.Y. Feb. 21, 2002) (proceeded pro se, dismissed on summary judgment).

discrimination on the basis of age, race, and national origin, and retaliation for engaging in protected activities.

II.     DISCUSSION

A.     Summary Judgment Standard

Summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). It is the initial burden of a movant on a summary judgment motion to come forward with evidence on each material element of his claim or defense, demonstrating that he or she is entitled to relief. A fact is material if it "might affect the outcome of the suit under the governing law . . . ." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). The evidence on each material element must be sufficient to entitle the movant to relief in its favor as a matter of law. Vermont Teddy Bear Co., Inc. v. 1-800 Beargram Co., 373 F.3d 241, 244 (2d Cir. 2004).

When the moving party has met this initial burden and has asserted facts to demonstrate that the non-moving party's claim cannot be sustained, the opposing party must "set forth specific facts showing that there is a genuine issue for trial," and cannot rest on "mere allegations or denials" of the facts asserted by the movant. Fed. R. Civ. P. 56(e). In raising a triable issue of fact, the non-movant carries only "a limited burden of production," but nevertheless "must 'demonstrate more than some metaphysical doubt as to the material facts,' and come forward with 'specific facts showing that there is a

genuine issue for trial.'"  Powell v. Nat'l Bd. of Med. Exam'rs, 364 F.3d 79, 84 (2d Cir.

2004) (quoting Aslandis v. United States Lines, Inc., 7 F3d 1067, 1072 (2d Cir. 1993)).

   An issue of fact is genuine "if the evidence is such that a reasonable jury

could return a verdict for the nonmoving party."  Anderson, 477 U.S. at 248.  The Court

must "view the evidence in the light most favorable to the non-moving party and draw all

reasonable inferences in its favor, and may grant summary judgment only when no

reasonable trier of fact could find in favor of the nonmoving party."  Allen v. Coughlin,

64 F.3d 77, 79 (2d Cir. 1995) (quotations and citations omitted); accord Matsushita Elec.

Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587-88 (1986).  In reviewing a motion

for summary judgment, the court must scrutinize the record, and grant or deny summary

judgment as the record warrants.  Fed. R. Civ. P. 56(c).  In the absence of any disputed

material fact, summary judgment is appropriate.  Id.  Mere "conclusory statements,

conjecture, or speculation by the party resisting the motion will not defeat summary

judgment."  Kulak v. City of New York, 88 F.3d 63, 71 (2d Cir. 1996) (citing Matsushita

Elec. Indus. Co., 475 U.S. at 587)); see also Anderson, 477 U.S. at 249-50 (noting that

summary judgment should be granted if the evidence is "merely colorable" or "not

significantly probative").

   Although discrimination and retaliation claims usually involve issues of

intent, which are often ill-suited to resolution at the summary judgment stage, the Second

Circuit has gone "out of [its] way to remind district courts that the 'impression that

summary judgment is unavailable to defendants in discrimination cases is

unsupportable.'"  Weinstock v. Columbia Univ., 224 F.3d 33, 41 (2d Cir. 2000) (quoting

McLee v. Chrysler Corp., 38 F.3d 67, 68 (2d Cir. 1994)), cert. denied, 540 U.S. 811

(2003).  See also Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 148 (2000)

("[T]rial courts should not treat discrimination differently from other ultimate questions

of fact." (internal quotations omitted)).


      B.     Res Judicata

          Defendant argues that plaintiff's claims of discrimination and retaliation in

the Postal Service's hiring process are barred by res judicata.  In Avillan I, plaintiff

commenced an action in federal court after the EEOC dismissed his 1999 EEO

Complaint.  In his complaint in Avillan I, plaintiff raised all of the same "failure to hire"

claims that he alleges in this action, and thus, as elaborated more fully below, plaintiff's

claims of discrimination and retaliation in the Postal Service's hiring process are barred

by res judicata.

          The doctrine of res judicata, or claim preclusion, instructs that "[a] final

judgment on the merits of an action precludes the parties or their privies from relitigating

issues that were or could have been raised in that action."  Maharaj v. Bankamerica

Corp., 128 F.3d 94, 97 (2d Cir. 1997) (quoting Federated Dep't Stores, Inc. v. Moitie,

452 U.S. 294, 398 (1981)).  This rule gives rise to four prerequisites that must be satisfied

in order to apply the doctrine: (1) there must be a final judgment on the merits; (2) the

judgment must have been rendered by a court of competent jurisdiction; (3) the cases

must involve the same parties or their privies; and (4) the cases must involve the same

cause of action.  See Corbett v. MacDonald Moving Servs., Inc., 124 F.3d 82, 87-88 (2d

Cir. 1997) (citing In re Teltronic Servs., Inc., 762 F.2d 185, 190 (2d Cir. 1985)).  In

determining whether a second suit involves the same cause of action as the first, "the fact

that the first and second suits involved the same parties, similar legal issues, similar facts, or essentially the same type of wrongful conduct is not dispositive.  Rather, the first judgment will preclude a second suit only when it involves the same 'transaction' or connected series of transactions as the earlier suit . . . ."  Legnani v. Alitalia Linee Aeree Italiane, S.P.A., 400 F.3d 139, 141 (2d Cir. 2005) (per curiam) (quoting Marahaj, 400 F.3d at 141).  Typically, the two suits concern the same transactions when "the second cause of action requires the same evidence to support it and is based on facts that were also present in the first."  Maharaj, 128 F.3d at 97.

        With regard to the first requirement, Avillan I rejected plaintiff's claims on timeliness grounds, which operated as a decision on the merits.  See Avillan I, 2002 WL 252479, at *2-4.  "The timeliness requirement of Title VII is analogous to a statute of limitations," McPherson v. New York City Dep't of Educ., 457 F.3d 211, 214 (2d Cir. 2006) (internal quotations omitted), and it is well established in the Second Circuit that "a dismissal for failure to comply with the statute of limitations will operate as an adjudication on the merits, unless it is specifically stated to be without prejudice." PRC Harris, Inc. v. Boeing Co., 700 F.2d 894, 896 (2d Cir.), cert. denied, 464 U.S. 936 (1983).

        The second requirement is also met, as the district court was a court of competent jurisdiction to hear and decide Avillan I.  Title VII's jurisdictional statute states that "[e]ach United States district court . . . shall have jurisdiction of actions brought under this subchapter," 42 U.S.C. § 2000e-5(f)(3), and permits actions to be brought in, inter alia, "any judicial district in the State in which the unlawful employment practice is alleged to have been committed . . . ."  Id.  The ADEA is less specific, but provides that "[a]ny person aggrieved may bring a civil action in any Federal district

court of competent jurisdiction . . . ."  29 U.S.C. § 663a(c).  In Avillan I, plaintiff alleged

violations of Title VII and the ADEA, and all of the claimed violations occurred in New

York.  The district court for this District was therefore competent to render judgment in

the case.

The third requirement—that both actions involve the same parties or their

privies—is satisfied, as Avillan I and this action feature the same plaintiff and the same

defendant, John E. Potter, in his capacity as the Postmaster General of the United States.[5]

Moving beyond the named defendants in the two actions, the discriminatory and

retaliatory acts alleged by plaintiff appear to have been perpetrated by the same Postal

Service employees.  Plaintiff's complaint in this action states that "my test score [to enter

the Postal Service] was 103[;] Christine Patterson and Luciano Rivera persisted that I

needed a test score [of] 110 to be hired. . . . After the EEO complaint I was offered a job

and hired by June of 1999."  (Compl. ¶ 8).  The Avillan I complaint stated, "[m]y test

score (103.10) I was informed that I needed a test score of 110 to be hired."  (Avillan I

Compl. ¶ 8, attached as Hallums Decl. Ex. CC)  There is thus sufficient commonality of

parties to apply the doctrine in this case.

The fourth requirement—that the cases involve the same cause of action—

is also fulfilled.  In Avillan I, in filling out the form complaint provided to him by this

Court's Pro Se Office, plaintiff checked a box indicating his desire to bring his claim

under the ADEA and not Title VII, although elsewhere in the complaint he raised race

and national origin discrimination as well.  (Avillan I Compl. ¶ 7)  In this case, plaintiff

used the same form complaint, but this time he checked the box indicating his desire to

---

[5] Plaintiff's initial complaint in Avillan I named Postmaster General William J. Henderson as the sole
defendant; however, by the time the district court reached a decision in Avillan I, Potter had been
substituted for Henderson, as his successor as Postmaster General.

bring his claims under Title VII and not the ADEA.  Similarly, here, plaintiff has elsewhere indicated a desire to claim age discrimination.  (Compl. ¶ 11).  These differences are not material, however, as "[i]t is the identity of facts surrounding the occurrence which constitutes the cause of action, not the legal theory upon which [the plaintiff] chose to frame [the] complaint."  Woods v. Dunlop Tire Corp., 972 F.2d 36, 39 (2d Cir. 1992), cert. denied, 506 U.S. 1053 (1993).  While plaintiff's complaints are not rich with detail, as discussed above, his allegations in both pleadings reveal that he is not basing his new "failure to hire" claims on different facts, or conduct by different individuals.  Therefore, all of plaintiff's claims that the Postal Service failed to hire him before June 1999 due to discrimination or retaliation are barred by res judicata.[6]

Accordingly, summary judgment is granted in favor of defendant with respect to all of plaintiff's claims of discrimination and retaliation in the Postal Service's hiring process.

C.    Election of Remedies

Defendant argues that summary judgment is appropriate with respect to plaintiff's claims of discrimination and retaliation in the temporary termination of his employment in 2001 because he elected to appeal that action through the MSPB process and not the EEO process.  As explained more fully below, because the Postal Service rescinded the termination before the MSPB decided the appeal, the MSPB was divested of jurisdiction over plaintiff's discrimination and retaliation claims.  Therefore, the only effect that the MSPB appeal could have on plaintiff's access to the EEO process was to

---

[6] I note that even if plaintiff were to allege new facts or different conduct in this action or any subsequent actions, his claims regarding the failure of the Postal Service to hire him in the mid to late 1990s would still be subject to timeliness and exhaustion requirements.

toll the limitations period for pursuing an EEO action.  The defendant's motion for summary judgment on plaintiff's election of remedies will therefore be denied.

The MSPB is a quasi-judicial government agency that adjudicates federal employees' appeals from certain types of personnel actions, including removal.  5 U.S.C. § 1204; 5 C.F.R. § 1201.3(a)(3).  While the MSPB exercises both original and appellate jurisdiction, this case concerns only the MSPB's appellate jurisdiction.  Discrimination and retaliation claims ordinarily cannot be appealed to the MSPB.  5 C.F.R. § 1201.3. There is an exception to this general rule when an employee believes that an appealable action such as removal was motivated by unlawful discrimination, in which case the employee has two options: (1) the employee can file a "mixed case appeal" with the MSPB, which is "an appeal filed with the MSPB that alleges that an appealable agency action was effected, in whole or in part, because of discrimination on the basis of race, color, religion, sex, national origin, handicap or age," 29 C.F.R. § 1614.302(a)(2); or (2) the employee can file a "mixed case complaint" with the agency's EEO office, which is defined as a "complaint of employment discrimination . . . based on race, color, religion, sex, national origin, age or handicap related to or stemming from an action that can be appealed to the [MSPB]."  29 C.F.R. § 1614.302(a)(1).

While an employee may file either a mixed case appeal or a mixed case complaint, the employee is forced to choose between the two procedures: "An aggrieved person may initially file a mixed case complaint with an agency . . . , or an appeal on the same matter with the MSPB . . . , but not both."  29 C.F.R. § 1614.302(b); see also Economou v. Caldera, 286 F.3d 144, 149 (2d Cir.), cert. denied sub nom. Economou v. White, 537 U.S. 975 (2002).  The aggrieved party is deemed to have made a "binding

'election' between the MSPB and EEO remedies . . . as soon as a formal petition is filed in either forum."  Economou, 286 F.3d at 149; see also 29 C.F.R. § 1614.302(b) ("[W]hichever is filed first shall be considered an election to proceed in that forum."). "Thus, according to the plain language of the governing regulations, the filing of the first formal petition determines the appropriate forum for agency review."  Economou, 286 F.3d at 149.

Plaintiff did, in the first instance, elect to pursue his unlawful termination claim with the MSPB as a mixed case appeal when he petitioned for review of his final removal and asserted claims of unlawful discrimination and retaliation.  (Friedman Decl. Ex. N)  While ordinarily that act would bind plaintiff to exclusively pursue his claims in the MSPB process, plaintiff never obtained a decision on the merits from the MSPB, because the Postal Service rescinded the removal on March 19, 2001, and his appeal was dismissed as moot.  (Friedman Decl. Ex. P)

In dismissing the appeal as moot, the MSPB determined that the rescission of the appealable action stripped the MSPB of jurisdiction over the appeal.  See, e.g., Muhammad v. City of New York Dep't of Corr., 126 F.3d 119, 122 (2d Cir. 1997) ("[M]ootness . . . is a jurisdictional question . . . .").  As the ALJ noted in the decision, although MSPB jurisdiction is normally determined by the nature of an appeal when initially filed, a federal agency can unilaterally divest the MSPB of jurisdiction by "completely rescind[ing] the action being appealed."  Himmel, 6 M.S.P.B. 408, 409 (1981); see also Cooper v. Dep't of the Navy, 108 F.3d 324, 326 (Fed. Cir. 1997) ("If an appealable action is canceled or rescinded by an agency, any appeal from that action [to the MSPB] becomes moot.").  Jurisdictional dismissals of mixed case appeals do not

preclude the MSPB-appellant from pursuing the remaining discrimination and retaliation claims in the EEO process: "If a person files a mixed case appeal with the MSPB . . . and the MSPB dismisses the appeal for jurisdictional reasons, the agency shall promptly notify the individual in writing of the right to contact an EEO counselor within 45 days of receipt of this notice and to file an EEO complaint . . . ."  29 C.F.R. § 1614.302(b).  Thus, in this case, plaintiff's initial election to appeal his removal to the MSPB did not preclude a challenge to the agency action through the EEO process.

Subsequent to the dismissal of his MSPB appeal, plaintiff did not seek EEO counseling within 45 days, although he also did not receive any notice of his right to do so.  Notwithstanding this oversight, discrimination and retaliation claims arising from plaintiff's removal are properly before this Court.  While plaintiff never grieved his removal after it became final in the November 29, 2000 Letter of Decision, plaintiff's 2000 EEO Complaint, filed on November 21, 2000, alleged discrimination and retaliation in connection with the October 2, 2000 Notice of Proposed Removal.  (Friedman Decl. Ex. J)  Federal complaints under Title VII and the ADEA are not strictly limited to claims that were explicitly raised in the underlying EEO actions, as "claims that were not asserted before the EEOC may be pursued in a subsequent federal court action if they are reasonably related to those that were filed with the agency."  Legnani v. Alitalia Linee Aeree Italiane, S.P.A., 274 F.3d 683, 686 (2d Cir. 2001) (per curiam) (internal quotations and citations omitted).  The facts and circumstances alleged in connection with plaintiff's removal in this action are "reasonably related" to the conduct alleged in the 2000 EEO Complaint.  Moreover, in any event, the final decision on removal and the Notice of Proposed Removal were addressed in the EEOC's opinion that preceded this action.

Therefore, defendant's motion for summary judgment on the election of remedies grounds is denied.

>   **D.**      Disparate Treatment on Account of Race or National Origin

Title VII prohibits employers from discriminating against employees with respect to compensation, terms, conditions, or privileges of employment on the basis of race or national origin.  42 U.S.C. § 2000e-2.  Where direct evidence of discrimination is absent, a Title VII plaintiff can prevail on the basis of circumstantial evidence; such cases are analyzed under the burden shifting framework established by the Supreme Court in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973).  See Joseph v. Leavitt, __ F.3d __, 2006 WL 2615313, at * 2 (2d. Cir. Sept. 13, 2006); Terry v. Ashcroft, 336 F.3d 128, 138 (2d Cir. 2003).  Under the McDonnell Douglas framework, the plaintiff bears an initial burden of establishing a prima facie case of discrimination.  Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 142 (2000).  To meet this burden of production, a plaintiff must show "(1) that he belonged to a protected class; (2) that he was qualified for the position he held; (3) that he suffered an adverse employment action; and (4) that the adverse employment action occurred under circumstances giving rise to an inference of discrimination."  Feingold v. New York, 366 F.3d 138, 152 (2d Cir. 2004); see also Terry, 336 F.3d at 138.  "By making out this 'minimal' prima facie case . . . the plaintiff creates a presumption that the employer unlawfully discriminated, and thus places the burden of production on the employer to proffer a nondiscriminatory reason for its action . . . ."  Joseph, 2006 WL 2615313, at *2 (quoting James v. New York Racing Ass'n, 233 F.3d 149, 154 (2d Cir. 2000) (alterations supplied)).  Once the employer meets its burden

of production, "the presumption completely drops out of the picture. . . . Thus, once the employer has proffered its nondiscriminatory reason, the employer will be entitled to summary judgment . . . unless the plaintiff can point to evidence that reasonably supports a finding of prohibited discrimination." Joseph, 2006 WL 2615313, at *2 (quoting James, 233 F.3d at 154).

                1.     Plaintiff's Prima Facie Case

        Plaintiff complains of a multitude of employment actions taken against him by his supervisors at the Postal Service. Specifically, plaintiff alleges discriminatory treatment in: (1) his proposed suspension and placement on off-duty status in 2000; (2) his termination in 2001; (3) the denial of his requests for annual leave; (4) the denial of an attendance award in 2000; (5) the denial of a uniform allowance in 2001 and 2002; (6) the instruction from his supervisors to his coworkers to dissociate from him; (7) his receipt of additional and hazardous work assignments; (8) the existence of false documents in his personnel file; and (9) the Postal Service's failure to pay him for all of the hours he has worked. As explained below, plaintiff can only establish his prima facie case with respect to the first two claims enumerated above.

        Plaintiff, as a Hispanic man born in Puerto Rico, belongs to a protected class, and can thus establish the first element of his prima facie case. While there is little in the record on the second element, it is sufficient for the purposes of deciding this motion to assume that since plaintiff remains in the employ of the Postal Service, he is qualified for his job as custodial laborer. The third and fourth elements of the prima facie case require more discussion.

i.       Adverse Employment Actions

In order to satisfy the third element of his prima facie case, plaintiff must demonstrate that he suffered "adverse employment actions," which requires evidence of "a materially adverse change in the terms and conditions of employment." Schiano v. Quality Payroll Sys., Inc., 445 F.3d 597, 609 (2d Cir. 2006) (internal quotations and citations omitted); see also Galabya v. New York City Bd. of Educ., 202 F.3d 636 (2d Cir. 2000). "Examples of materially adverse changes include termination of employment, a demotion evidenced by a decrease in wage or salary, a less distinguished title, a material loss of benefits, significantly diminished material responsibilities, or other indices unique to a particular situation." Schiano, 445 F.3d at 609 (internal quotations and citations omitted). "To be materially adverse, a change in working conditions must be 'more disruptive than a mere inconvenience or an alteration of job responsibilities.'" Sanders v. New York City Human Res. Admin., 361 F.3d 749, 755 (2d Cir. 2004) (quoting Terry, 336 F.3d at 138).

Defendant concedes that plaintiff's suspension and termination were materially adverse employment actions, and thus satisfy the third element of plaintiff's prima facie case. (Def. Mem. at 11 & n.1)  For the purposes of this motion, I will assume without deciding that the denial of plaintiff's annual leave, the instruction from his supervisors to his coworkers to dissociate from him, the existence of allegedly false documents in his personnel file, the failure to provide him with his uniform allowance, and the failure to pay plaintiff for all of the hours he has worked, all constitute materially adverse changes in the terms and conditions of his employment for the purposes of

plaintiff's prima facie case.[7]  I need only consider plaintiff's claim that he received more work than his colleagues, and his claim of a denial of an attendance award for the year 2000, to determine whether those actions were materially adverse.

With respect to the denial of an attendance award for the year 2000, the record shows that the award (or the failure to receive an award) carries no material benefits or detriments for Postal Service employees.  (Avillan Dep. 109)  The attendance award—which plaintiff has received for every other year of his employment with the Postal Service—is a paper certificate bearing the employee's name.  (Id.)  There is no financial reward, and there is no evidence to suggest that it affects an employee's standing or opportunities for career advancement in any way with the Postal Service. The withholding of an attendance award is unlike a "termination of employment, a demotion evidenced by a decrease in wage or salary, a less distinguished title, a material loss of benefits, [or] significantly diminished material responsibilities," Schiano, 445 F.3d at 609 (internal quotations and citations omitted), and is therefore not a materially adverse change in the terms and conditions of his employment.

Plaintiff's claim that he received additional work presents a closer question.  The Second Circuit has confirmed that an employee's receipt of a "disproportionately heavy workload" may constitute a materially adverse employment action.  Feingold, 366 F.3d at 152-53.  In Feingold, a white administrative law judge ("ALJ") for the New York State Department of Motor Vehicles ("DMV") satisfied the third element of his prima facie case by offering testimonial evidence that in the white Chief ALJ's absence, the African-American ALJ who sat as acting Chief ALJ abused his

---

[7] As will be seen, infra, plaintiff fails to allege facts sufficient to support an inference of discrimination as to these claims.

powers in that capacity by "regularly reassign[ing] cases to the white ALJs that had

originally been allocated to the three African-American ALJs." Id. at 153.  In addition,

the African-American Chief Clerk who was responsible for adjusting the ALJs' workload

"regularly reshuffled [cases] to give white ALJs more work than their African-American

counterparts." Id.

        Plaintiff in this case has offered testimonial evidence that he has been

given a disproportionate amount of work as compared to the other custodial laborers.  His

testimony is that the custodial workers are each assigned a route, and that his supervisors

give him additional areas on other laborers' routes, which results in more work for him

and correspondingly less work for the benefited coworker.  (Avillan Dep. 98-99)

Plaintiff has represented that this happened "quite often."  (Id. at 118)  Thus, plaintiff has

met his burden of producing evidence that his receipt of additional assignments was a

"materially adverse" change in the terms and conditions of his employment.


        ii.      Inference of Discrimination

        Having satisfied the first three prongs of his prima facie case for all claims

except for those relating to his attendance award, plaintiff must show that the adverse

employment actions occurred under circumstances permitting an inference of

discrimination.  Plaintiff testified that he never once heard his supervisors or any other

Postal Service agent or employee make reference to plaintiff's race or national origin in

any context.[8]  (Avillan Dep. 130-31)  However, plaintiff may still satisfy the fourth

---

[8] Plaintiff had the following exchange with the Assistant United States Attorney at his deposition:
    Q: Did Mr. Hardy ever say anything to you about your race or national origin?
    A: No.

element of his prima facie case if he can show that his employer "treated him less favorably than a similarly situated employee outside his protected group."  Graham v. Long Island R.R., 230 F.3d 34, 39 (2d Cir. 2000).  "When considering whether a plaintiff has raised an inference of discrimination by showing . . .  disparate treatment, [the Second Circuit] has said that the plaintiff must show [he] was 'similarly situated in all material respects' to the individuals with whom [he] seeks to compare [him]self."  Id. (quoting Shumway v. United Parcel Serv., Inc., 118 F.3d 60, 64 (2d Cir. 2000)).  In assessing whether two employees are similarly situated in all material respects, courts look to "(1) whether the plaintiff and those he maintains were similarly situated were subject to the same workplace standards and (2) whether the conduct for which the employer imposed discipline was of comparable seriousness."  Id. at 40.  Although the question of whether two individuals are similarly situated often presents an issue of fact for the jury, "there should be an objectively identifiable basis for comparability.  Hence, the standard for comparing conduct requires a reasonably close resemblance of the facts and circumstances of plaintiff's and comparator's cases . . . ."  Id. (internal quotations and citations omitted).

          With the few exceptions discussed below, plaintiff fails to demonstrate that he was treated differently from similarly situated employees outside his protected class.  The only support in the record for most of plaintiff's claims of discrimination is found in the following exchange in plaintiff's deposition:

---

Q: As far as you know, has Mr. Hardy ever said anything to anyone else about your race or national origin?
A: Not in particular, no.
Q: Did you ever hear Mr. Hardy say anything about the race or origin or any other employees?
A: No.
(Avillan Dep. 130-31)

Q: Do you believe that Mr. Hardy discriminated against you based
on your being Hispanic?

A: Yes.

Q: And how do you know that?

A: Because what's happening to me and all what I wrote here
hasn't happened to one of the African Americans.

Q: And what have you seen that leads you to claim that Mr. Hardy
treated you any differently based on your race or national origin?

A: Based on what I explained so far is all the harassment that I
received, it has not happened to any African American . . . .

(Avillan Dep. 107).  Elsewhere, plaintiff stated at his deposition that other employees

were treated better than he was by the supervisors, "especially African Americans."  (Id.

at 95)

Conclusory assertions such as this fail to furnish any objective basis for

comparing the treatment plaintiff received to more favorable treatment received by his

African American coworkers, such that an inference of discrimination may be drawn.

These statements represent the only evidence supporting his charge of discrimination

with respect to his claims of discrimination in: (1) the denial of plaintiff's annual leave,

(2) the instruction from his supervisors to his coworkers to dissociate from him, (3) the

existence of allegedly false documents in his personnel file, (4) the failure to provide him

with his uniform allowance, and (5) the failure to pay plaintiff for all of the hours he has

worked.  These allegations are not couched in any admissible evidence that arguably

gives rise to an inference of discrimination.  No reasonable jury could find in plaintiff's

favor on these claims on the basis of the evidence in the record on the motion.  Therefore,

defendant's motion for summary judgment with respect to those claims must be granted.

Plaintiff's deposition testimony provides slightly more detail in his allegations of race or national origin discrimination in connection with three alleged discriminatory acts: (1) the failure to provide him with an attendance award for the year 2000; (2) the assignment of additional routes; and (3) the punishment that plaintiff received in connection with his loss of the Postal Service keys, which led to his "emergency placement on off duty status," his proposed suspension, and his termination.

With respect to the attendance award, plaintiff testified that one of his African American coworkers, John Ocean, received an attendance award, and that Ocean began working with the Postal Service at the same time as plaintiff in 1999.  (Avillan Dep. 108)  As discussed above, the failure to provide plaintiff with an attendance award was not materially adverse; but even if it was, plaintiff has failed to come forward with evidence that would permit the factfinder to conclude that plaintiff and Ocean are similarly situated in all material respects.  All plaintiff has said is that he and Ocean began working at the same facility at the same time.  (Id. at 108)  The record fails to reflect whether plaintiff and Ocean had the same job titles, or if they had similar attendance records, or provide any other information that would bear on receiving an attendance award.  Thus, the record fails to establish the fourth element of plaintiff's prima facie case as to the denial of an attendance award in 2000.

In connection with the additional routes, plaintiff alleges that the only other coworker of his to be assigned additional work was Miguel Jostino, who is also Hispanic and also from Puerto Rico.  (Avillan Dep. 127-28, 164)  However, by plaintiff's own admission, Jostino was not the only other Hispanic or Puerto Rican employee at the Postal Service who shared plaintiff's job responsibilities and pay level.  (Id. at 127)

Plaintiff has not provided any information on how these other Puerto Rican and Hispanic employees were treated, or explained whether or how the African American employees were favored over them.  It is also unclear whether the other Hispanic or Puerto Rican employees benefited from reassignment of work to plaintiff, or whether the reassignments only benefited African Americans.

At first blush, plaintiff's evidence on the forth prong of his prima facie case bears some resemblance to the evidence presented in Feingold v. New York.  In that case, discussed above, the plaintiff survived summary judgment based on his testimony that the acting Chief ALJ and the Chief Clerk routinely assigned the white ALJs more work than the three African-American ALJs  Feingold, 366 F.3d at 153.  The evidence on the record in this case is different in a critical respect.  Unlike Feingold, where the evidence showed that two African-American DMV employees routinely abused their position to assign work to the white employees for the benefit of all of the African-American employees, plaintiff in this case has alleged only that two of the several Hispanic and Puerto Rican employees received extra work, without specifying where the reassigned work came from, or which employees benefited from the reassignment. Therefore, plaintiff, despite having had a full opportunity to conduct discovery, has failed to provide the Court with any evidence that furnishes an objective basis for comparing the way in which members of different racial groups were treated, such that an inference of discrimination may arise.

In contrast, plaintiff has provided a sufficiently objective basis for inferring that similarly situated employees received more favorable treatment when they lost Postal Service keys.  After plaintiff lost the keys, he was placed on emergency off-

duty status, served with a Notice of 14-Day Suspension, and later terminated.  Plaintiff stated under oath that two of his African American coworkers, Mario Sealey and a person identified only as "Logan," lost Postal Service keys without any repercussions.  (Avillan Dep. 102-05)  Thus, with respect to the lost keys and the events that followed, plaintiff has met his burden of establishing a prima facie case under the <u>McDonnell Douglas</u> framework.

2.     <u>Defendant's Legitimate, Nondiscriminatory Justification</u>

Since plaintiff carried his burden of production on the prima facie case on one claim—the punishment for losing the keys—the burden shifts to the defendant to offer a legitimate, nondiscriminatory reason for the employment actions taken against plaintiff.  "This burden is one of production, not persuasion; it 'can involve no credibility assessment.'"  <u>Reeves v. Sanderson Plumbing Prods., Inc.</u>, 530 U.S. 133, 142 (2000) (quoting <u>St. Mary's Honor Ctr. v. Hicks</u>, 509 U.S. 502, 509 (1993)).  The Postal Service has come forward with documentary evidence that its actions in suspending plaintiff were premised upon a combination of the following three interrelated and nondiscriminatory reasons: that plaintiff (1) lost the Postal Service keys; (2) walked away from an assignment; and (3) was disruptive at a pre-disciplinary meeting prior to his placement on emergency off-duty status.  (Friedman Decl. Exs. G, H)  In addition, his Notice of Proposed Removal and subsequent termination were supported by his failure to report to work or to comply with instructions on how to take emergency leave on September 1, 2000; his disrespect to a supervisor in pre-disciplinary meeting on September 11, 2000; and the previous loss of the keys.  (Friedman Decl. Exs. K, L)

Defendant has thus carried the burden under <u>McDonnell Douglas</u> by proffering a legitimate, nondiscriminatory basis for its adverse employment actions against plaintiff.

3.     <u>Evidence of Pretext</u>

Once the defendant meets its burden of production, "the <u>McDonnell Douglas</u> framework—with its presumptions and burdens—disappear[s], and the sole remaining issue [is] discrimination <u>vel</u> <u>non</u>." <u>Reeves</u>, 530 U.S. at 142-43 (internal quotations and citations omitted).  Here, plaintiff offers little evidence to rebut defendant's proffered reasons for its employment actions.  Plaintiff's evidence of pretext relies principally on the same evidence used to establish his prima facie case: that the disciplinary actions that followed the loss of the keys were not visited on the similarly situated African American employees.  Plaintiff's only other evidence of pretext is his deposition testimony that Hardy mischaracterized or lied about several events leading up to his suspension and termination.

In the analogous context of a post-verdict motion for judgment as a matter of law, the Second Circuit has noted that "there will be instances where, although the plaintiff has established a prima facie case and set forth sufficient evidence to reject the defendant's explanation, no rational factfinder could conclude that the action was discriminatory." <u>Cross v. New York City Transit Auth.</u>, 417 F.3d 241, (2d Cir. 2005) (internal quotations and citations omitted); <u>see</u> <u>also</u> <u>Schnabel v. Abramson</u>, 232 F.3d 83, 90 (2d Cir. 2000) (noting that in the context of summary judgment motions on ADEA claims, the Second Circuit has "decline[d] to hold that *no* ADEA defendant may succeed

on a summary judgment motion so long as the plaintiff has established a prima facie case and presented evidence of pretext" (emphasis in original)).  On summary judgment, the Court must "examin[e] the entire record to determine whether plaintiff could satisfy his 'ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff.'"  Schnabel, 232 F.3d at 90 (quoting Reeves, 530 U.S. at 143).

In this case, plaintiff has provided a weak prima facie case, which consists only of his deposition testimony that two of his African American colleagues lost keys without similar repercussions.  Beyond that, his only evidence of pretext is his testimony that his supervisor has exaggerated, misconstrued, or in one context, lied about underlying events and plaintiff's conduct.  Plaintiff's quibbles with his supervisor's version of events, even when combined with his testimony that two African American employees were not punished for losing keys, are not sufficient to raise a material issue of fact requiring trial on whether plaintiff was the victim of race or national origin discrimination.  Therefore, all of plaintiff's claims of disparate treatment on the basis of race and national origin discrimination must be dismissed.

F.    Hostile Work Environment

A plaintiff who is unable to provide sufficient evidence of disparate treatment under Title VII may nonetheless prevail if he can show that he was subjected to a hostile work environment.  Feingold, 366 F.3d at 149.  A hostile work environment claim requires "evidence that 'the workplace is permeated with discriminatory intimidation, ridicule, and insult, that is sufficiently pervasive to alter conditions of the

victim's employment and create an abusive working environment." Demoret v.

Zegarelli, 451 F.3d 140, 149 (2d Cir. 2006) (quoting Harris v. Forklift Sys., Inc., 510

U.S. 17, 21 (1993)).  The plaintiff must show that he "subjectively perceived the

environment to be abusive, [and] also that the environment was objectively hostile and

abusive."  Id.  "As a general rule, incidents must be more than 'episodic; they must be

sufficiently continuous and concerted in order to be deemed pervasive.'"  Alfano v.

Costello, 294 F.3d 365, 374 (2d Cir. 2002) (quoting Perry v. Ethan Allen, Inc., 115 F.3d

143, 149 (2d Cir. 1997)).  Because "[e]veryone can be characterized by sex, race,

ethnicity, or (real or perceived) disability[,] and many bosses are harsh, unjust, and rude[,

i]t is therefore important in hostile work environment cases to exclude from consideration

personnel decisions that lack a linkage or correlation to the claimed ground of

discrimination.  Otherwise, the federal courts will be become a court of personnel

appeals."  Id. at 377.

        As discussed above, plaintiff has failed to come forward with evidence to

support his claims that the harassments he received were motivated by discriminatory

animus.  Besides plaintiff's deposition testimony that what happens to him does not

happen to African-Americans, plaintiff's only evidence of discrimination is his claim that

one African-American employee received an attendance award when he did not, that the

only other employee to be assigned extra work was also Hispanic and from Puerto Rico,

and that two African-American employees were unpunished when they lost Postal

Service keys.  These three events fail to raise a triable issue that his "workplace is

permeated with discriminatory intimidation, ridicule, and insult, that is sufficiently

pervasive to alter conditions of the victim's employment and create an abusive working

environment." Demoret, 451 F.3d at 149.  Thus, summary judgment must be granted in favor of the government on plaintiff's hostile work environment claim under Title VII.

G.    Age Discrimination

As with race and national origin discrimination, plaintiff presents no direct evidence of age discrimination.  Therefore, plaintiff's age discrimination claims are evaluated under the McDonnell Douglas burden shifting framework, which places the initial burden on the plaintiff to establish a prima facie case of discrimination.  See Graves v. Finch Pruyn & Co., 457 F.3d 181, 187 (2d Cir. 2006).  The prima facie case requires a showing that "[1] at the relevant time the plaintiff was a member of a protected class; [2] the plaintiff was qualified for the job; [3] the plaintiff suffered an adverse employment action; and [4] the adverse employment action occurred under circumstances giving rise to an inference of discrimination."  Id.  If the burden is met, the employer must present a nondiscriminatory justification.  Id.  If the employer is capable of meeting that burden, the plaintiff must show the justification to be pretextual.  Id.

While it is not disputed that plaintiff—born in 1944—was at all relevant times in a protected class, see 29 U.S.C. § 631 (extending ADEA protection to individuals over 40-years-old), the record now before the Court is utterly silent on the issue of age-related discrimination.  The only factual allegation in the record of age-related discrimination is in plaintiff's original complaint in Avillan I, where plaintiff alleged that discriminatory "age factors" were used to calculate his Postal Service entrance exam score.  (Avillan I Compl. ¶ 8)  As discussed previously in this opinion, plaintiff's claims of discrimination in the hiring process are now barred under res

judicata.  The remainder of the record fails to show that plaintiff ever heard any

coworkers or supervisors reference his age, or that any younger employees were given

favorable treatment.  In fact, the record does not disclose the age of any Postal Service

employees other than plaintiff.  Therefore, the record is devoid of facts that might permit

an inference of age discrimination, and so summary judgment must be granted on

plaintiff's ADEA claims.


        H.     Retaliation

       Both Title VII and the ADEA contain not only substantive anti-

discrimination provisions, but also anti-retaliation provisions that protect employees from

retaliation by employers for participation in proceedings to challenge discrimination.  See

42 U.S.C. § 2000e-3(a); 29 U.S.C. § 623(d).  Retaliation claims are evaluated under the

same McDonnell Douglass burden shifting analysis as discrimination claims.  See Jute v.

Hamilton Sundstrand Corp., 420 F.3d 166, 173 (2005).  A prima facie case of retaliation

requires a plaintiff to "adduce 'evidence sufficient to permit a rational trier of fact to find

[1] that [] he engaged in protected participation or opposition under Title VII [or the

ADEA], [2] that the employer was aware of this activity, [3] that the employer took

adverse action against the plaintiff, and [4] that a causal connection exists between the

protected activity and the adverse action, i.e., that a retaliatory motive played a part in the

adverse employment action.'"  Kessler v. Westchester County Dep't of Soc. Servs., 461

F.3d 199, 205-06 (2d Cir. 2006) (alterations in original).  Once the plaintiff establishes

his prima facie case of retaliation, the burden shifts to the employer to proffer a

legitimate, nonretaliatory explanation for the activity, at which point the burden shifts

back to the plaintiff to come forward with evidence that the justification is pretextual.
Quinn v. Green Tree Credit Corp., 159 F.3d 759, 768-69 (2d Cir. 1998), abrogated on
other grounds by Nat'l R.R. Passenger Corp. v. Morgan, 536 U.S. 101 (2002).

        1.      Prima Facie Case

              i.      Protected Activity

The record discloses that plaintiff has engaged in copious amounts of EEO
activity.  In order for that activity to be protected, plaintiff must have pursued it in good
faith, and with a reasonable belief that he was opposing unlawful actions.  See
McMenemy v. City of Rochester, 241 F.3d 279, 285 (2d. Cir. 2001).  He need not have
been correct in his assessments.  Id.  In this case, plaintiff sought or filed EEO counseling
or complaints in August and November of 1998; April and July of 1999; June, July, and
November of 2000; January of 2001; and April and August of 2002.  See generally
McGuire v. United States Postal Service, 749 F. Supp. 1275, (S.D.N.Y. 1990) (noting
EEO counseling is protected activity under the retaliation provision of Title VII).
Plaintiff satisfies the first element of his prima facie case because he had a good faith and
reasonable belief that he was challenging actions that violated Title VII and the ADEA.

             ii.      Employer Knowledge

The second requirement, that his employer had knowledge of the protected
activity, is easily satisfied under the corporate knowledge doctrine.  See Kessler, 461
F.3d at 210; Gordon v. New York City Bd. of Educ., 232 F.3d 111, 116 (2d Cir. 2000)
("Neither this nor any other circuit has ever held that, to satisfy the knowledge

requirement, anything more is necessary than general corporate knowledge that the

plaintiff has engaged in protected activity.").  Under this doctrine, a plaintiff need not

show that the individuals who allegedly retaliated against him had actual knowledge of

his prior protected activity.  Gordon, 232 F.3d at 116.  Rather, a plaintiff alleging

retaliation need only show that the employer—the Postal Service—was aware of his

complaints.  See id.  Since plaintiff sought counseling with the Postal Service's EEO

Office, and filed his complaints with the Postal Service's EEO Office, the knowledge

requirement is satisfied here.


iii.     Adverse Employment Actions

The Supreme Court has recently held that "adverse employment actions"

in the retaliation context refers to a broader range of conduct than it does in the

discrimination context.  Burlington Northern & Santa Fe Ry. Co. v. White, __ U.S. __,

126 S. Ct. 2405, 2415 (2006) ("Burlington Northern"); see also Kessler, 461 F.3d at 207-

09.  While a discrimination plaintiff must show a materially adverse change in the terms

and conditions of employment in order to meet his prima facie burden, a retaliation

plaintiff need only show that "a reasonable employee would have found the challenged

action materially adverse, which in this context means it well might have dissuaded a

reasonable worker from making or supporting a charge of discrimination."  Kessler, 451

F.3d at 207 (quoting Burlington Northern, 126 S. Ct. at 2415).  The use of the word

"reasonableness" in the standard shows that the test is "an objective, rather than a

subjective, one."  Id.  The Burlington Northern Court emphasized that the inclusion of the

word "material" was significant in order to "separate significant from trivial harms." 126 S. Ct. at 2415.

As with plaintiff's discrimination claims, defendant does not dispute that plaintiff's suspension and termination were adverse within the meaning of the retaliation provisions. For the reasons discussed below, it is unnecessary to decide whether any of the remaining claims of retaliation, with the exception of the claim that plaintiff was made to dust down a floor on which there was an anthrax scare, satisfy the third prong of plaintiff's prima facie case, and so it will be assumed for the purposes of this opinion that they do.

Plaintiff has alleged that in December 2002, he was assigned to dust down a floor in on which there had been an anthrax scare. (Avillan Dep. 240-44) While at first blush it appears that this assignment would be of a kind that "might have dissuaded a reasonable worker from making or supporting a charge of discrimination," Kessler, 451 F.3d at 207, plaintiff has failed to provide sufficient information to the Court such that the assignment might be objectively evaluated. For instance, plaintiff has said that he was assigned to work on the possibly contaminated floor, but plaintiff has admitted that he does not know if other employees were made to work on that floor. (Avillan Dep. 244) Moreover, plaintiff has not informed the Court as to whether other areas in his Postal Service facility were also possibly contaminated. Thus, plaintiff has failed to produce even the minimal evidence necessary to meet his burden that his assignment in December 2002 was an adverse employment action.

iv.   <u>Causation</u>

Even if it is assumed that all of plaintiff's remaining claims satisfy the first three elements of the prima facie case, all but one of his claims falters on the fourth prong, which requires plaintiff to show a causal connection between the protected activity and the adverse employment action.  As with plaintiff's discrimination claims, there is no direct evidence of retaliation against him.[9]  However, a retaliation plaintiff need not put forward direct evidence of causation; rather, an employee may rely on the fact that "the protected activity was closely followed in time by the adverse action."  <u>Cifra v. Gen. Elec. Co.</u>, 252 F.3d 205, 217 (2d Cir. 2001); <u>see</u> <u>also</u> <u>Clark County Sch. Dist. v. Breeden</u>, 532 U.S. 268, 274 (2001) (collecting cases in which three and four-month periods between the protected activity and the adverse action were insufficient to establish a causal connection).  In order to rely on temporal proximity alone, the two events must be "very close."  <u>Breeden</u>, 532 U.S. at 274.  While close proximity in time will suffice to establish causation, "[w]here timing is the only basis for a claim of retaliation, and gradual adverse job actions began well before the plaintiff had ever engaged in any protected activity, an inference of retaliation does not arise."  <u>Slattery v. Swiss Reinsurance Am. Corp.</u>, 248 F.3d 87, 95 (2d Cir. 2001).  Therefore, a plaintiff cannot prevent the occurrence of an adverse job action that has already been initiated by interposing an EEO complaint before the challenged action becomes final.

---

[9] Plaintiff testified at his deposition that he never heard Hardy make any comments about his EEO activity:
> Q: Did Mr. Hardy ever say anything to you about your prior EEO activities?
> A: No.
> Q: Did you ever hear that Mr. Hardy said anything to anybody else about your prior EEO activity?
> A: I'm not aware.  Maybe he told Julio Amauro.  I really don't know.
> Q: Did you ever hear Mr. Hardy say anything about the prior EEO activities of any other employees?
> A: No.

(Avillan Dep. 131)

As noted previously, plaintiff either sought or filed EEO counseling or complaints in August and November of 1998; April and July of 1999; June, July, and November of 2000; January of 2001; and April and August of 2002. Therefore, plaintiff can establish an inference of causation by showing that the adverse employment actions he suffered occurred in close proximity with these dates.

Although plaintiff has alleged many incidents of harassment by his employers, plaintiff has failed to provide the Court with dates or even time frames for most of the allegedly retaliatory conduct. It is therefore impossible for plaintiff to rely on temporal proximity for most of his claims. The only dates available in the record are those relating to (1) the existence of false documents in his personnel file; (2) the events surrounding his proposed suspension; and (3) the events surrounding his termination.[10] The record shows that the false documents appeared in his folder in August of 2001 (Pl. Mem. Opp. Ex. S); that the events which lead to his proposed suspension, beginning with his loss of the keys, took place in May 2000 (Friedman Decl. Exs. H, I); and that the events leading up to his termination took place from September to November 2000 (Friedman Decl. Exs. K, L, M).

As of August 2001, plaintiff's most recent protected act had occurred in January of 2001, which was the month in which plaintiff both filed his MSPB appeal and his first federal civil complaint against the Post Service. Temporal proximity of over six months, on its own, is insufficient to raise a presumption of causation. See Breeden, 532 U.S. at 274; Hollander v. American Cyanamid Co., 895 F.2d 80, 85-86 (2d Cir. 1990)

_____

[10] I note that plaintiff has provided the Court with a date for one of his additional assignments. His assignment to work on the site of an anthrax scare occurred in December 2002. However, since plaintiff has not presented sufficient evidence that this assignment was an adverse employment action, I need not address it here.

(finding four month lag, without other evidence, insufficient to establish causation in a prima facie case of retaliation).  Similarly, in May of 2000, when all of the events relevant to plaintiff's suspension and placement on off-duty status arose, plaintiff's most recent protected activity had occurred in July 1999, when he filed the 1999 EEO Complaint.  Five months, standing alone, is also not sufficiently close in time to create a presumption of causation. See Breeden, 532 U.S. at 274; Hollander, 895 F.2d at 85-86. Thus, plaintiff cannot make out a prima facie case of retaliation on these claims.

Plaintiff's termination presents a closer question.  On June 26, 2000, plaintiff sought EEO counseling in connection with the Notice of 14-Day Suspension, and it appears that plaintiff sent a pre-complaint form into the Postal Service EEO Office in mid July 2000.  (Friedman Decl. Ex. I)  The events that formed the basis for plaintiff's proposed removal occurred in early and mid-September, and plaintiff's Notice of Proposed Removal is dated October 2, 2000.  (Friedman Decl. Ex. K)  While there is no bright line rule for how much time must elapse between the protected activity and the adverse employment action, two months is likely sufficient to give rise to the presumption.  See Quinn, 159 F.3d at 769 (finding that summary judgment was inappropriate on the element of causation when plaintiff was discharged less than two months after complaining to defendant's manager, and just ten days after plaintiff filed a complaint with the state division of human rights).  I note, however, that the presumption of causation in plaintiff's termination draws no force from the fact that plaintiff's removal was made final on November 29, 2000, a mere eight days after he filed his formal 2000 EEO Complaint.  That final decision was merely a part of a process that had

begun in October when his supervisors proposed his removal, more than a month before the formal complaint was filed.  See Slattery, 248 F.3d at 95.


2.        Defendant's Legitimate, Nonretaliatory Justification

As plaintiff has satisfied his burden of establishing his prima facie case of retaliation in his termination, the burden shifts to the defendant to proffer a nonretaliatory reason for plaintiff's termination.  Defendant is capable of carrying this burden on the same grounds that proved satisfactory in the discrimination context: (1) the Notice of Proposed Removal set forth three charges that motivated the proposal (Friedman Decl. Ex. K), and (2) the independent findings by plaintiff's manager that the charges were substantiated and that plaintiff's conduct justified removal.  (Friedman Decl. Ex. L)  The documentary evidence of these justifications suffices to satisfy defendant's burden.


3.        Evidence of Pretext

Since the Postal Service met its burden to produce a legitimate nonretaliatory justification for termination, the burden shifts back to plaintiff to present evidence of pretext.  "To defeat [a defendant's] motion for summary judgment, [plaintiff is] obliged to produce not simply 'some' evidence, but 'sufficient evidence to support a rational finding that the legitimate, nondiscriminatory reasons proffered by the employer were false, and that more likely than not [retaliation] was the real reason . . . .'"  Van Zant v. KLM Royal Dutch Airlines, 80 F.3d 708, 714 (2d Cir. 1996) (quoting Woroski v. Nashua Corp., 31 F.3d 105, 110 (2d Cir. 1994)), abrogated on other grounds by Nat'l R.R. Passengers Corp. v. Morgan, 536 U.S. 101 (2002).  Moreover, where, as here, the

nonretaliatory justification is supported by an employer's conclusions following an investigation, a plaintiff cannot escape summary judgment by simply attacking the legitimacy of the employer's findings.  In discrimination cases, including those premised on retaliation, courts "are decidedly not interested in the truth of the allegations against plaintiff.  [They] are interested in what '*motivated* the employer'; the factual validity of the underlying imputation against the employee is not at issue."  McPherson v. New York City Dep't of Educ., 457 F.3d 211, 216 (2d. Cir. 2006) (quoting United States Postal Serv. Bd. of Governors v. Aikens, 460 U.S. 711 (1983)) (emphasis in McPherson).

Plaintiff's evidence of retaliation falls into two categories: (1) his prima facie case, and (2) plaintiff's testimony that the allegations in the Notice of Proposed Removal and the findings in the Letter of Decision were inaccurate or wrong.  However, plaintiff's testimony challenges only the allegations and findings, and not his employer's motivation in firing him.  See McPherson, 457 F.3d at 216.  Thus, plaintiff has not presented evidence that his employer was "motivated" by retaliation when he was terminated.  On the evidence presented on this motion and drawing all reasonable inferences in plaintiff's favor, no reasonable jury could find that the employer's actions were pretext for retaliation.  Summary judgment in favor of the Postal Service is warranted.


CONCLUSION

For the foregoing reasons, defendant's motion for summary judgment is granted.  The Clerk shall enter judgment in favor of the defendant.

SO ORDERED.

Dated: New York, New York
        November 1, 2006

P. Kevin Castel
United States District Judge